329 F.3d 51
 Don BEHARRY, also known as Donald Beharry, Petitioner-Appellee,
v.
John ASHCROFT, Attorney General of the United States; James Ziglar, Commissioner of the Immigration and Naturalization Service; Edward McElroy, District Director of the Immigration and Naturalization Service, New York District; Immigration and Naturalization Service, Respondents-Appellants.
 Docket No. 02-2171.
 United States Court of Appeals, Second Circuit.
 Argued: January 30, 2003.
 Decided: May 1, 2003.
 
 COPYRIGHT MATERIAL OMITTED Robert M. Loeb, United States Department of Justice, Washington, D.C. (Robert D. McCallum, Jr., Assistant Attorney General, Donald E. Keener, Anne Murphy, United States Department of Justice, Washington, D.C.; Alan Vinegrad, United States Attorney for the Eastern District of New York, Brooklyn, NY, on the brief) for Respondents-Appellants.
 Jennifer M. Green, Center for Constitutional Rights, New York, N.Y. (Judith Brown Chomsky, William Goodman, Center for Constitutional Rights, New York, NY; Nancy Kelly, Harvard Immigration & Refugee Clinic of Greater Boston Legal Services and Harvard Law School, Boston, MA; Genet Getachew, Brooklyn, NY; Paul Hoffman, Schonbrun DeSimone Seplow Harris & Hoffman LLP, Venice, CA, on the brief) for Petitioner-Appellee.
 Martin S. Kaufman, New York, NY; John H. Findley, J. David Breemer, Sacramento, CA, submitted a brief for amici curiae Atlantic Legal Foundation and Pacific Legal Foundation.
 Professor William J. Aceves, California Western School of Law, San Diego, CA; Professor Joan Fitzpatrick, University of Washington Law School, Seattle, WA; Franklin Siegel, City University of New York School of Law, Flushing, NY, submitted a brief for amici curiae International Human Rights Organizations.
 Before: JACOBS, CALABRESI, and SOTOMAYOR, Circuit Judges.
 SOTOMAYOR, Circuit Judge.
 
 
 1
 Respondent John Ashcroft, Attorney General of the United States, appeals from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) granting petitioner Don Beharry a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the ground that petitioner was eligible for discretionary relief from deportation under § 212(h) of the Immigration and Naturalization Act ("INA"). The district court held that various international treaty obligations required that petitioner be given the opportunity to apply for discretionary § 212(h) relief, and ordered the Immigration and Naturalization Service to conduct a hearing under § 212(h) to determine whether to grant petitioner that relief. We hold that because petitioner failed to exhaust his administrative remedies, neither the district court nor this Court has subject matter jurisdiction to consider his claim for § 212(h) relief. Because petitioner cannot be excused from either the statutory exhaustion requirement or the common-law exhaustion doctrine, we do not reach the question whether the statutory exhaustion requirement of the INA applies to petitioner's claim. We reverse the district court's judgment granting the writ, and remand for entry of a judgment dismissing the habeas petition.
 
 BACKGROUND
 I. Factual and Procedural Background
 
 2
 Petitioner Don Beharry ("petitioner" or "Beharry"), a native and citizen of Trinidad, entered the United States as a lawful permanent resident ("LPR") in 1982 at the age of seven. His mother is also an LPR; his sister and seven-year-old daughter are United States citizens. The record does not disclose his relationship to the child's mother, or the nature and extent of his emotional or financial support for these relatives.
 
 
 3
 In July 1996, Beharry participated in the robbery of $714 from a coffee shop. In November 1996, he was convicted of robbery in the second degree in violation of N.Y. Penal Law § 160.10, and was sentenced to twenty-seven to fifty-six months' imprisonment. In February 1997, during Beharry's incarceration, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Beharry with deportability as an aggravated felon. Deportation proceedings took place before an Immigration Judge ("IJ") between May 1997 and January 1998.
 
 
 4
 During these proceedings, Beharry admitted deportability as an aggravated felon, and requested three types of relief: a hearing on his eligibility for discretionary relief under INA § 212(c)[1]; asylum under INA § 208 (codified at 8 U.S.C. § 1158); and withholding of deportation under INA § 243(h).[2] The IJ found Beharry barred from both § 212(c) relief and political asylum because he had been convicted of an aggravated felony, and ineligible for § 243(h) relief because he was not a member of a protected class under that section. The IJ accordingly ordered Beharry deported to England, with an alternate order of deportation to Trinidad.[3] Beharry appealed to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision and dismissed Beharry's appeal.
 
 
 5
 Beharry then filed a petition for habeas relief in the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) pursuant to 28 U.S.C. § 2241. The district court granted Beharry's petition and ordered the INS to conduct a hearing on Beharry's eligibility for discretionary relief under INA § 212(h) (codified at 8 U.S.C. § 1182(h)). Beharry v. Reno, 183 F.Supp.2d 584, 605 (E.D.N.Y.2002). The Attorney General ("respondent") appealed to this Court.
 
 II. The District Court's Opinion
 
 6
 The district court agreed with the IJ and the BIA that Beharry was not eligible for discretionary relief under § 212(c), asylum under § 208, or withholding of deportation under § 243(h). Beharry, 183 F.Supp.2d at 588-92, 603. The court then considered, sua sponte, several other possible forms of relief. The court first found that Beharry was ineligible for cancellation of removal under INA § 240A (codified at 8 U.S.C. § 1229b), because he had been convicted of an aggravated felony. Beharry, 183 F.Supp.2d at 592, 603. The court next discussed INA § 212(h), which authorizes the Attorney General to grant a discretionary waiver of deportation in certain circumstances, including, inter alia, cases in which an alien's removal from the United States would cause extreme hardship to an alien's U.S. citizen parent or child. Beharry, 183 F.Supp.2d at 592; see also INA § 212(h).[4] Although noting that on its face § 212(h) is inapplicable to Beharry because he is an aggravated felon,[5] the district court nonetheless granted Beharry's habeas petition on the ground that he was entitled to a hearing on § 212(h) relief. Beharry, 183 F.Supp.2d at 592, 603-05.
 
 
 7
 In reaching this outcome, the district court concluded that a reading of § 212(h) that precluded relief to Beharry because of his status as an aggravated felon would contravene American obligations under international law. Beharry, 183 F.Supp.2d at 603-05. As the applicable sources of international law, the court discussed the International Covenant on Civil and Political Rights, the Convention on the Rights of the Child, the Universal Declaration of Human Rights, and customary international law. Id. at 595-601. The court found that these sources of law might be violated by deporting Beharry without considering the impact such deportation would have on Beharry's daughter, a United States citizen; that violating international law could present a constitutional problem under the Supremacy Clause, see U.S. Const., art. VI, § 2; and that § 212(h) "should be construed in conformity with international law to avoid a constitutional issue if `fairly possible.'" Beharry, 183 F.Supp.2d at 603-05 (quoting Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)).
 
 
 8
 The district court attempted a reading that sought to avoid the perceived constitutional issue by holding that "aggravated felon[s]," as referred to in § 212(h), were only those aliens whose crimes qualified as aggravated felonies at the time the crimes were committed. Beharry, 183 F.Supp.2d at 605. Because Beharry's crime was not an aggravated felony in July 1996 when he committed it, but — due to intervening statutory changes in the INA's definition of "aggravated felony"[6] — was an aggravated felony in November 1996 when he pled guilty, the district court held that Beharry should not be considered an "aggravated felon" within the meaning of § 212(h). See Beharry, 183 F.Supp.2d at 604-05. The district court recognized that this interpretation of § 212(h) conflicted with Domond v. INS, 244 F.3d 81, 85 (2d Cir.2001) (holding that application of AEDPA to eliminate the availability of § 212(c) relief was not impermissibly retroactive as to petitioners who had committed their crimes before AEDPA's effective date, so long as their convictions came after AEDPA's effective date), but suggested that Domond ought to be reconsidered in light of the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), which discussed the permissibility of retroactive application of certain provisions of the INA. See Beharry, 183 F.Supp.2d at 589-91, 605.
 
 
 9
 Finding that Beharry was eligible for § 212(h) relief under its interpretation of "aggravated felon," the district court granted Beharry's habeas petition and ordered the INS to conduct a hearing under § 212(h). Beharry, 183 F.Supp.2d at 604-05. The judgment was stayed pending appellate review.
 
 DISCUSSION
 I. Standard of Review
 
 10
 The district court's grant of a writ of habeas corpus is reviewed de novo. Jenkins v. Artuz, 294 F.3d 284, 290 (2d Cir. 2002). The district court's factual findings in support of the grant are reviewed for clear error. Id.
 
 
 11
 II. The Availability of a Hearing on Discretionary § 212(h) Relief
 
 A. Exhaustion of Administrative Remedies
 
 12
 Respondent first argues on appeal that the district court lacked jurisdiction to consider Beharry's claim for relief under § 212(h) because Beharry did not present that claim to either the IJ or the BIA and thus failed to meet the administrative exhaustion requirement. Beharry concedes that the issue of § 212(h) relief was not raised during the administrative proceedings below, see Petitioner's Brief at 4-5 (noting that Beharry "requested three types of relief [from the IJ]: a hearing under § 212(c) of the INA; asylum under § 208 of the INA; and withholding of deportation under § 243(h)(2)(b) of the INA"), but argues that a futility exception to the exhaustion requirement applies here and allows the federal courts to assert jurisdiction over his petition.
 
 
 13
 1. Purposes of the Administrative Exhaustion Requirement
 
 
 14
 The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." Howell v. INS, 72 F.3d 288, 291 (2d Cir.1995) (quoting Guitard v. United States Sec'y of Navy, 967 F.2d 737, 740 (2d Cir.1992)) (internal quotation marks omitted). Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record. See McCarthy v. Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); McKart v. United States, 395 U.S. 185, 193-95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).
 
 
 15
 The requirement of administrative exhaustion can be either statutorily or judicially imposed. See Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir.1998). This Court has explained that the distinction between the two exhaustion requirements can be "pivotal," see id., because statutory exhaustion requirements are mandatory, while the judicial (common-law) exhaustion doctrine is discretionary and includes a number of exceptions. See McCarthy, 503 U.S. at 144, 112 S.Ct. 1081 ("Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." (internal citations omitted)); see also Bastek, 145 F.3d at 94 (noting the distinction between statutory and judicial exhaustion requirements); Howell, 72 F.3d at 291 (discussing exceptions to the judicial exhaustion doctrine).
 
 
 16
 2. Whether Failure to Meet a Statutory Exhaustion Requirement Can Be Excused
 
 
 17
 The statutory provision in the INA that the parties assert governs review of Beharry's deportation proceeding, now repealed,[7] states in relevant part that "[a]n order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." INA § 106(c) (formerly codified at 8 U.S.C. § 1105a(c)).[8] Both parties assume that this statutory provision imposes an exhaustion requirement on Beharry's claim, despite the fact that he has petitioned for habeas review, not for direct judicial review of a BIA order. We discuss infra section II.A.3 the question whether the exhaustion requirement of § 106(c) applies in a habeas proceeding; assuming, arguendo, that it does, we conclude in this section that Beharry cannot be excused for his failure to meet the statutory exhaustion requirement.
 
 
 18
 Respondent asserts that because statutory exhaustion requirements are mandatory, Beharry's failure to exhaust may not be excused; Beharry claims that his failure to raise the § 212(h) argument to the IJ and the BIA may be excused because it would have been futile to raise that claim below.
 
 
 19
 The Supreme Court held in Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), that courts may not read a futility exception into the statutory exhaustion requirement of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The Supreme Court found that because Congress had expressly included an administrative exhaustion requirement in the statute,[9] the petitioner was required to exhaust administrative processes even though the only remedy he sought, money damages, was completely unavailable through the administrative grievance system. Booth, 532 U.S. at 734-35, 741, 121 S.Ct. 1819.
 
 
 20
 The Supreme Court stated that if a statute mandated exhaustion, exceptions available in the judicial exhaustion doctrine would not be read into that statute:
 
 
 21
 That Congress has mandated exhaustion... defeats the argument of Booth and supporting amici that [reading the exhaustion requirement not to include a futility exception] is at odds with traditional doctrines of administrative exhaustion.... [W]e stress the point that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.
 
 
 22
 Id. at 741 n. 6, 121 S.Ct. 1819 (emphasis added) (internal citations omitted).
 
 
 23
 Booth does allow that exhaustion may not be required "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," id. at 736, 121 S.Ct. 1819, because "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust," id. at 736 n. 4, 121 S.Ct. 1819. This may technically be less an "exception" to a statutory exhaustion requirement than it is a statement regarding the parameters of that requirement. Nonetheless, it can be termed an exception to statutorily imposed requirements of administrative exhaustion that there is no requirement to exhaust remedies "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Id. at 736, 121 S.Ct. 1819; see also Singh v. Reno, 182 F.3d 504, 511 (7th Cir.1999) (noting that the statutory exhaustion requirement of INA § 242(d)(1) must be met unless the BIA "can[not] conceivably dispose of the claim").
 
 
 24
 Our own pre-Booth case law is consistent with the Booth Court's treatment of statutory exhaustion requirements. In Bastek, this Court stated that a failure to meet the statutory exhaustion requirement to of the Federal Crop Insurance Act, 7 U.S.C. § 6912(e), could not be excused.[10] In reaching this conclusion, we first noted the distinction between statutory exhaustion requirements and the common-law exhaustion doctrine:
 
 
 25
 Two kinds of exhaustion doctrine are currently applied by the courts, and the distinction between them is pivotal. Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them. Common law (or "judicial") exhaustion doctrine, in contrast, recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process.
 
 
 26
 Bastek, 145 F.3d at 94. We then explained that "[i]f Congress has not explicitly required exhaustion, judicial exhaustion doctrine provides that courts may, in their discretion, waive administrative exhaustion under certain circumstances. However, the statutory provision mandating exhaustion contained in 7 U.S.C. § 6912(e) is explicit." Id. (footnote omitted). We thus concluded that "the various exceptions to exhaustion urged by plaintiffs do not apply where, as here, a clear statutory exhaustion requirement exists."[11] Id. at 95.
 
 
 27
 It is clear that Beharry's claim does not fall within the limited exception to statutory exhaustion requirements recognized by Booth — namely, that there is no requirement to exhaust remedies "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth, 532 U.S. at 736, 121 S.Ct. 1819. The argument that he is entitled to a hearing on the possibility of receiving discretionary § 212(h) relief is clearly a claim that the IJ and the BIA could consider; it cannot be said that the IJ and the BIA do not "have authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." Id. at 736 n. 4, 121 S.Ct. 1819.
 
 
 28
 Beharry argues that "it would clearly be futile to request at the administrative proceedings that § 212(h) be interpreted and applied in a manner consistent with international law as neither the IJ nor the BIA could provide such relief." Petitioner's Brief at 13. The cases on which Beharry relies for this proposition, however, hold only that the IJ and the BIA do not have jurisdiction over claims for relief that are outside the scope of the INA and are instead based solely on customary international law or treaty law. See In re Medina, 19 I. & N. Dec. 734, 742, 746 (BIA 1988) ("[E]ven if it were assumed that customary international law could provide a basis for individual aliens to assert a right that their deportation be withheld,... [t]he authority to consider such requests has not been delegated by the Attorney General to the immigration judges or this Board."); see also Bradvica v. INS, 128 F.3d 1009, 1014 (7th Cir.1997) (noting that the BIA in Medina "held that the Attorney General had not delegated jurisdiction to grant relief under customary international law or treaty law"); In re A-E-M-, 21 I. & N. Dec. 1157, 1162 (BIA 1998) (explaining that "[a]s we held in ... Medina, neither the Geneva Convention nor customary international law creates a potential remedy from deportation that can be sought by individual aliens in deportation proceedings over and above that provided by the [INA]").
 
 
 29
 Beharry's claim for relief from deportation does not arise solely under international law, but rather arises under § 212(h) of the INA. We need not reach a decision as to the scope of adjudicative authority of the IJ and the BIA, however, because even assuming that Beharry is correct that the IJ and the BIA are not empowered to interpret § 212(h) in light of international law, his claim of eligibility for § 212(h) relief is still a claim that the IJ and the BIA have authority to consider. Cf. Booth, 532 U.S. at 734-35, 741, 121 S.Ct. 1819 (holding that petitioner did not exhaust his administrative remedies where he failed to raise his complaint in the administrative grievance process, despite the fact that the grievance process had no power to grant petitioner the monetary relief he sought as the sole remedy for his complaint). If § 106(c) imposes a statutory exhaustion requirement on Beharry, then, we conclude that we do not have subject matter jurisdiction to hear Beharry's § 212(h) claim, as he has failed to exhaust his administrative remedies.
 
 
 30
 3. Whether INA § 106(c) Imposes a Statutory Exhaustion Requirement on Habeas Petitioners
 
 
 31
 As noted above, the parties treat § 106(c) as a statutory exhaustion requirement applicable to Beharry; if this was so, we would conclude that Beharry cannot be excused from his failure to exhaust. We think, however, that in light of the Supreme Court's holding in St. Cyr, it is potentially an open question whether the exhaustion requirement of § 106(c) applies in a habeas proceeding.[12]
 
 
 32
 In St. Cyr, the Supreme Court held, inter alia, that certain provisions of IIRIRA did not eliminate federal courts' jurisdiction over habeas petitions pursuant to 28 U.S.C. § 2241. Of relevance to this case is the Supreme Court's consideration of three provisions of IIRIRA, amending INA §§ 242(a)(1), 242(a)(2)(C), and 242(b)(9).[13] The Supreme Court held that the references in these statutory provisions to "judicial review" or "review" should not be read to foreclose habeas corpus review, because "[i]n the immigration context, `judicial review' and `habeas corpus' have historically distinct meanings." St. Cyr, 533 U.S. at 311-12, 121 S.Ct. 2271 (citing Heikkila v. Barber, 345 U.S. 229, 235-36, 73 S.Ct. 603, 97 L.Ed. 972 (1953)). The Court further noted that none of these statutes explicitly mentioned habeas or 28 U.S.C. § 2241, and that because of the potential constitutional question that would be raised by eliminating habeas review, Congress had not met the requirement of giving the "clear, unambiguous and express statement" needed to deprive the federal courts of habeas jurisdiction. Id. at 311-14, 121 S.Ct. 2271.
 
 
 33
 An argument can be made that St. Cyr applies here. Section 106(c) states, in more detail than was quoted above:
 
 
 34
 An order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations.... Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding.... No petition for review or habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.
 
 
 35
 INA § 106(c) (emphasis added). The first sentence of the statute refers only to "review," but the statute goes on to refer in subsequent sentences to "petition[s] for review or for habeas corpus." This explicit reference to habeas corpus in some parts of § 106(c), but not in the sentence barring judicial review absent administrative exhaustion, could indicate within the meaning of St. Cyr that the exhaustion requirement in the first sentence of § 106(c) should be read as applying only on judicial review, not on habeas corpus review.
 
 
 36
 That reading narrows the phrase "shall not be reviewed by any court" to bar one kind of review (direct) and not another (habeas). However, it is hard to see how inclusion of habeas could be made more explicit in that construction except by the awkward emendation "shall not be reviewed or habeas corpused by any court," something Congress could have foregone on the theory that a bar on habeas review was implicit because the sentences that follow refer repeatedly to petitions "for review or habeas corpus." It may also be that the passage can be read to clarify itself by the flat and broad prohibition (with stated exceptions) that "[n]o petition for review or habeas corpus shall be entertained if the validity of the order [of deportation or exclusion] has been previously determined in any civil or criminal proceeding."
 
 
 37
 Moreover, unlike § 106(c), the provisions of IIRIRA at issue in St. Cyr were jurisdiction-stripping provisions, and the Supreme Court's analysis turned in part on the constitutional problem that would arise if the statutory terms were read to eliminate habeas jurisdiction as well as jurisdiction on direct review. A similar constitutional issue would not arise if we read the exhaustion requirement of § 106(c) to apply to habeas petitioners.
 
 
 38
 Does, however, the fact that the Supreme Court, in St. Cyr, interpreted the preclusion of judicial "review" not to bar habeas corpus review in some sections of IIRIRA, mean that the same interpretation must be applied each time the term "review" is used in that statute? It is, of course, a "`normal rule of statutory construction' that `identical words used in different parts of the same act are intended to have the same meaning.'" Gustafson v. Alloyd Co., 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)). But this is only a presumption, not a per se rule. As the Seventh Circuit has noted:
 
 
 39
 English offers so many possibilities that the same word used twice in the same sentence may convey different meanings. Courts therefore regularly announce that the way a word is used in one section of a statute does not necessarily establish its meaning in some other section. Usually identical words in different sections mean identical things, but not invariably. All depends on context.
 
 
 40
 Calderon v. Witvoet, 999 F.2d 1101, 1104 (7th Cir.1993) (internal citations omitted); see also Robinson v. Shell Oil Co., 519 U.S. 337, 342-43, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (noting that the meaning of the term "employees" is restricted to include only "current employees" in one part of Title VII but is more inclusive in other parts).
 
 
 41
 In the statute before us, there are sections in which "review," read naturally, appears to encompass habeas corpus review. See, e.g., INA § 242(e)(2) (codified at 8 U.S.C. § 1252(e)(2)) ("Judicial review of any determination made under section 235(b)(1) [relating to inspections of arriving aliens] is available in habeas corpus proceedings...."). Whether "review" means the same in § 106(c) as it seems to mean in § 242(e)(2), or whether "review" in § 106(c) has the meaning ascribed to it in other sections of IIRIRA by the Supreme Court in St. Cyr, is a question that calls for a close analysis of the contextual and historical differences between the various IIRIRA sections and the INA sections IIRIRA amended.
 
 
 42
 This Court has not yet been squarely confronted with the question whether St. Cyr prohibits application of the INA's statutory exhaustion requirement to a habeas petitioner. We need not decide the question here, because we conclude below that even if § 106(c) does not apply to Beharry, he cannot be excused from his failure to meet the judicial exhaustion requirement that would otherwise apply.
 
 
 43
 4. Requirements of and Exceptions to the Judicial Exhaustion Doctrine
 
 
 44
 Assuming, arguendo, that interpretation of § 106(c) is governed by St. Cyr, Beharry (as a habeas petitioner) is not subject to the INA's statutory exhaustion requirement. He would still be subject, however, to the less stringent judicial exhaustion requirement. See McCarthy, 503 U.S. at 144, 112 S.Ct. 1081; McKart, 395 U.S. at 193, 89 S.Ct. 1657; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).
 
 
 45
 As noted above, if an exhaustion requirement is judicially imposed instead of statutorily imposed, a number of exceptions apply that allow courts to excuse a party's failure to exhaust administrative remedies. Specifically, exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." Able, 88 F.3d at 1288 (quoting Howell v. INS, 72 F.3d 288, 291 (2d Cir.1995)) (internal quotation marks omitted); see also McCarthy, 503 U.S. at 146-49, 112 S.Ct. 1081.
 
 
 46
 Beharry argues that his claim falls within the futility exception to the judicial exhaustion doctrine. This Court has explained that "[t]o understand the futility exception to the exhaustion requirement, the purposes behind the requirement of exhaustion ... should be understood." Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir.1993). As noted above, those purposes include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary. See McCarthy, 503 U.S. at 145, 112 S.Ct. 1081; McKart, 395 U.S. at 193-95, 89 S.Ct. 1657. If a petitioner can show "that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the [petitioner] from the requirement." Kennedy, 989 F.2d at 594.
 
 
 47
 It would not have been futile for Beharry to raise his claim of eligibility for § 212(h) relief before the IJ or BIA. That Beharry's argument would likely have failed is not tantamount to stating that it would have been futile to raise it; and indeed, many of the purposes for requiring exhaustion would have been served had Beharry raised his claim below. As became apparent at oral argument in this case, Beharry's failure to raise his § 212(h) claim in the administrative proceedings left sizeable gaps in the factual record presented to us on appeal — significant factual matters concerning Beharry's family circumstances, his relationship with his daughter, and the extent of her reliance on his financial support were undeveloped below and are completely absent from the factual record. These omissions are extensive enough that we would be hard-pressed to decide whether Beharry's family circumstances warranted a hearing on § 212(h) relief were we even to find that we did have subject matter jurisdiction over the petition. And if Beharry had raised his § 212(h) claim below and either the IJ or the BIA had found that he was eligible for a § 212(h) hearing, that decision would potentially have resolved the matter and eliminated the need for judicial consideration of Beharry's habeas petition. It would not have been futile for Beharry to raise his § 212(h) claim during his administrative deportation proceedings, and as a result his failure to exhaust cannot be excused.
 
 B. Scope of This Ruling
 
 48
 We need not and do not decide whether § 106(c) imposes a statutory exhaustion requirement on habeas petitioners like Beharry, because Beharry's failure to raise his § 212(h) claim below cannot be excused whether the exhaustion requirement is statutorily or judicially imposed. We thus conclude that we do not have subject matter jurisdiction to hear Beharry's claim that he is entitled to a hearing on § 212(h) relief.
 
 
 49
 As this holding disposes of Beharry's § 212(h) claim, we need not discuss the merits of the district court's analysis of the interaction between international law, the Supremacy Clause, and § 212(h). Nothing in our decision to reverse on other grounds the judgment of the district court should be seen as an endorsement of the district court's holding that interpretation of the INA in this case is influenced or controlled by international law.
 
 
 50
 III. Whether Beharry is Entitled to a Hearing on § 212(c) Relief
 
 
 51
 In addition to his claim for § 212(h) relief, Beharry argues that we may affirm the district court's opinion on the alternate ground that he is entitled to a hearing on his application for relief under § 212(c). The district court rejected this claim and found that § 212(c) relief was not available. Beharry, 183 F.Supp.2d at 603.
 
 
 52
 Because Beharry has not cross-appealed the district court's denial of § 212(c) relief, we decline to address this claim. It is true that "a party need not cross-appeal in order to assert an alternate ground based on the record to support a district court decree." Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir.1991). A cross-appeal is required, however, before we will address a claim — such as Beharry's claim that he is eligible for a hearing on the availability of § 212(c) relief — that would supplement the relief granted by the district court. See Burgo v. Gen. Dynamics Corp., 122 F.3d 140, 145 (2d Cir.1997); accord Moore v. Johnson, 194 F.3d 586, 593 (5th Cir.1999). While the requirement of a cross-appeal in this case is not strictly jurisdictional, it is a matter of good practice where no justification for hearing the claim absent a cross-appeal is offered. See Burgo, 122 F.3d at 145.
 
 
 53
 We note as well that even were Beharry's § 212(c) claim properly raised, we would likely find him ineligible for § 212(c) relief. We held in Domond that the denial of § 212(c) relief to petitioners who committed their crimes prior to § 212(c)'s repeal was not impermissibly retroactive so long as their convictions came after § 212(c)'s repeal. Domond, 244 F.3d at 85-86. Beharry argues that Domond was overruled by the Supreme Court's decision in St. Cyr, but we have indicated that Domond remains good law. See Rankine v. Reno, 319 F.3d 93, 100 (2d Cir.2003) (noting that "an alien who committed his crime prior to § 212(c)'s repeal, but was convicted after such relief became unavailable, could not claim an impermissible retroactive effect as to him because he had `no basis for claiming similar reliance' to the alien in St. Cyr" (quoting Mohammed v. Reno, 309 F.3d 95, 102-03 (2d Cir. 2002))).
 
 CONCLUSION
 
 54
 For the reasons stated above, we hold that we do not have subject matter jurisdiction to consider Beharry's claim that he is entitled to a hearing on the availability of § 212(h) relief, and that Beharry may not raise his § 212(c) claim because he failed to cross-appeal the district court's denial of § 212(c) relief. The judgment of the district court granting the writ is reversed. We remand for entry of a judgment dismissing Beharry's habeas petition.
 
 
 
 Notes:
 
 
 [1]
 INA § 212(c) (formerly codified at 8 U.S.C. § 1182(c)) was repealed by § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009-546et seq. Section 212(c) had stated: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General...." The explicit language of this provision granted the Attorney General discretionary authority only to admit excludable aliens, but it was consistently interpreted by both the courts and the Board of Immigration Appeals to authorize the Attorney General to grant discretionary relief from deportation as well. See INS v. St. Cyr, 533 U.S. 289, 295-96, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); Francis v. INS, 532 F.2d 268, 270-71 (2d Cir.1976); In re Silva, 16 I. & N. Dec. 26, 30 (BIA 1976).
 
 
 [2]
 INA § 243(h) (formerly codified at 8 U.S.C. § 1253(h)) was repealed by IIRIRA § 307(a)
 
 
 [3]
 During the deportation proceedings, Beharry had designated England as the country to which he preferred to be deported. The alternate order of deportation to Trinidad is to take effect in the event that the INS is unable to effectuate Beharry's deportation to England
 
 
 [4]
 INA § 212(h) grants the Attorney General discretion to waive inadmissibility "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen [or LPR] of the United States ... if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien...." INA § 212(h)(1)(B). This Court has explained that "[b]y its terms, § 212(h) provides for a waiver of inadmissibility only; but by a quirk elsewhere in the INA, § 212(h) in effect allows for a waiver of deportability as well."Jankowski-Burczyk v. INS, 291 F.3d 172, 175 & n. 2 (2d Cir.2002).
 
 
 [5]
 INA § 212(h) provides in relevant part: "No waiver shall be granted under this subsection... if ... the alien has been convicted of an aggravated felony." INA § 212(h)
 
 
 [6]
 IIRIRA § 321 amended INA § 101(a)(43) (codified at 8 U.S.C. § 1101(a)(43)), to expand the definition of "aggravated felony," effective September 30, 1996
 
 
 [7]
 Because the INS commenced deportation proceedings against Beharry in February 1997, before IIRIRA's April 1, 1997 effective date, review of Beharry's deportation proceedings is governed by IIRIRA's "transitional rules."See IIRIRA § 309(a), (c), 110 Stat. 3009 (codified as amended as a note to 8 U.S.C. § 1101). IIRIRA's permanent rules apply to aliens whose deportation proceedings commenced on or after April 1, 1997.
 
 
 [8]
 IIRIRA's permanent rules contain an almost identical exhaustion requirementSee INA § 242(d)(1) (codified at 8 U.S.C. § 1252(d)(1)) (providing for judicial review of orders of removal, and stating in relevant part that "[a] court may review a final order of removal only if — (1) the alien has exhausted all administrative remedies available to the alien as of right").
 
 
 [9]
 42 U.S.C. § 1997e(a) states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
 
 
 [10]
 7 U.S.C. § 6912(e) states: "Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against (1) the Secretary; (2) the Department; or (3) an agency, office, officer, or employee of the Department."
 
 
 [11]
 The recent statement of this Court that "[a] petitioner may avoid even statutorily established administrative exhaustion requirements when, inter alia, `a plaintiff has raised a substantial constitutional question,'"Theodoropoulos v. INS, 313 F.3d 732, 737 (2d Cir. 2002) (quoting Able v. United States, 88 F.3d 1280, 1288 (2d Cir.1996)), may be to the contrary, but the mandate in that case has not issued and a petition for rehearing is sub judice at present. In any event, petitioner in the instant case only raises a futility exception to the exhaustion requirement.
 
 
 [12]
 Theodoropoulos treated § 242(d)(1), the successor provision to § 106(c), as a statutory exhaustion requirement when applied to a habeas petitioner, but the panel in that case did not discuss or consider the impact of St. Cyr on the applicability of § 242(d)(1) in the habeas context. See Theodoropoulos, 313 F.3d at 736-37.
 
 
 [13]
 Section 242(a)(1) provides that with certain exceptions, "[j]udicial review of a final order of removal ... is governed only by" the Hobbs Act's procedures for review of agency orders in the courts of appeals. Section 242(b)(9) provides that "[j]udicial review of all questions of law and fact ... shall be available only in judicial review of a final order under this section." Finally, § 242(a)(2)(C) states: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain enumerated criminal offenses