**Anathanasios THEODOROPOULOS, Petitioner–Appellee,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellant.**

**Docket No. 01–2715.**

United States Court of Appeals, Second Circuit.

Argued: June 21, 2002.

Decided: Dec. 18, 2002.

Amended: Dec. 20, 2002.

Athanasios Theodoropoulos, pro se, c/o Lori Sherman & Associates, Bearsville, NY, for Petitioner–Appellee.

John C. Cunningham, United States Department of Justice, Office of Immigration Litigation, Washington, DC (Robert D. McCallum, Jr., assistant attorney general, Donald E. Keener, deputy director, on brief), for Respondent–Appellant.

Before: WALKER, Chief Judge, WINTER and F.I. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge.

The Immigration and Naturalization Service ("INS") appeals from the September 20, 2001 order of the United States District Court for the Western District of New York (Richard J. Acara, *Judge*) which denied the INS's motion to dismiss petitioner-appellee Athanasios Theodoropoulos's petition for writ of habeas corpus and granted the petition for the limited purpose of remanding Theodoropoulos's case to the Board of Immigration Appeals. Theodoropoulos sought a writ of habeas corpus from the district court, seeking release from detention, a stay of deportation, and an order vacating his deportation order, claiming that because he was convict-ed before the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), he should have been considered for relief pursuant to § 212(c) of the Immigration and Nationality Act of 1952 ("INA").

This Court reverses the district court's denial of the INS's motion to dismiss and its order remanding Theodoropoulos's case for further BIA proceedings, finding that Theodoropoulos failed to exhaust administrative remedies and concluding that under *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), retroactive application of AEDPA and IIRIRA to an alien defendant convicted after a jury trial does not raise a substantial constitutional question warranting relief from administrative exhaustion requirements.

## I.

Habeas petitioner Athanasios Theodoropoulos, a native of Greece, legally immigrated to United States on May 15, 1969. Theodoropoulos built a life in the United States, marrying, and raising two children in his New Jersey home. On March 29, 1988, however, Theodoropoulos was convicted in the United States District Court for the Eastern District of Pennsylvania, after a jury trial, of drug conspiracy, distribution of cocaine, possession with intent to distribute, and aiding and abetting. The court imposed a twenty-five year prison sentence.

### A. INS Removal Proceedings

When the United States Parole Commission granted parole to Theodoropoulos on August 26, 1999, the INS immediately took custody of him and began deportation proceedings. On September 10, 1999, Theodoropoulos appeared before an Immigration Judge ("IJ") for a removal hearing.

Theodoropoulos asked the IJ for relief from deportation based on sections 234, suspension of deportation, and 212(c), waiver of deportation, of the INA. The IJ informed Theodoropoulos that the 1996 IIRIRA replaced both sections with § 240A, cancellation of removal, codified at 8 U.S.C. § 1229b, which did not provide relief to aliens who, like Theodoropoulos, had been convicted of an aggravated felony. *See* 8 U.S.C. § 1229b(b) (2001). The court adjourned the proceedings until the next morning to allow Theodoropoulos to consider the Government's evidence.

At the hearing the following day, the judge found Theodoropoulos ineligible for any form of relief, and ordered his removal to Greece. The IJ explained the consequences of his ruling as follows:

Q: I have found that you are statutorily ineligible for any form of relief. I have found you are removable as charged and I have ordered your removal to Greece. If you disagree with my decision, sir, you may appeal it to a higher court, to the Board of Immigration Appeals, or if you are satisfied with my decision, you may accept it today as final. Do you wish to appeal my decision, sir, or accept it?

A: No, Your Honor, I want to be removed as soon as possible to my country.

Q: So, you accept my decision as final?

A: Yes, yes, I do.

Q: Government?

A: It's final, Judge.

On October 4, 1999, Theodoropoulos, then detained at the INS Federal Detention Facility in Batavia, New York, filed a petition for a writ of habeas corpus in the Western District of New York and a notice of appeal from the IJ's September 10, 2000 removal order. Despite these filings, the INS deported Theodoropoulos on October 5, 1999.

## B. District Court Proceedings

Although Theodoropoulos's appeal to the Board of Immigration Appeals was rejected on procedural grounds, his habeas petition proceeded in the federal district court. On January 14, 2000, the district court ordered the INS to file an answer to the petition before March 15, 2000. In lieu of an answer, the INS filed a motion to dismiss the petition on jurisdictional grounds.

Pursuant to 28 U.S.C. § 636(b), the district court assigned the matter to United States Magistrate Judge H. Kenneth Schroeder, Jr. On February 18, 2001, Magistrate Judge Schroeder filed a Report and Recommendation ("R & R") recommending that the motion to dismiss be denied and that the matter be remanded to the BIA. In the report, Magistrate Judge Schroeder incorrectly found that Theodoropoulos was convicted on drug-related charges after entering a guilty plea, rather than following a jury trial. Based in part on this factual error, Judge Schroeder recommended that the district court apply the "constitutional exception" to the rule requiring exhaustion of administrative remedies before seeking relief in a federal district court, *see Johnpoll v. Thornburgh*, 898 F.2d 849, 850–51 (2d Cir.1990), so that the court could consider Theodoropoulos's assertion that retroactive application of the IIRIRA provision retracting § 212(c)—and removing the possibility of discretionary relief from deportation—violated his due process rights. The R & R advised the district court to deny the INS's motion to dismiss and to grant Theodoropoulos's habeas petition to the extent of remanding the case to the BIA for review in light of this Court's decision in *St. Cyr*, 229 F.3d 406, 421 (2d Cir.2000).

The INS filed objections to the Magistrate's R & R indicating that this Court's holding in *St. Cyr*, 229 F.3d at 421, then the law governing retroactive application of AEDPA to deportation proceedings, applied only to petitioners who pled guilty before AEDPA's passage, not to petitioners like Theodoropoulos who were convicted after a jury trial.

Despite the INS's objections,[1] the district court, without correcting the magistrate's erroneous factual finding, adopted the R & R, denied the motion to dismiss, and granted Theodoropoulos's petition to the extent of remanding the case to the BIA for further proceedings in line with the Supreme Court's intervening affirmation of *St. Cyr*. *See INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The INS filed a timely notice of appeal.

Before this Court, the INS again argues that the district court did not have jurisdiction to review Theodoropoulos's petition for habeas corpus because (1) Theodoropoulos orally waived his right to appeal the Immigration Judge's decision, and (2) under the Supreme Court's decision in *St. Cyr*, the district court could not find a "constitutional exception" to the administrative exhaustion requirement where Theodoropoulos was convicted not on a guilty plea, but after a jury trial. Theodoropoulos argues (1) that he did not intend to waive his right to appeal, and (2) that even if he did waive that right, his claim raises a substantial constitutional question exempting it from exhaustion requirements because *St. Cyr* applies to defendants convicted before the passage of AEDPA and IIRIRA whether their convictions followed a trial or a guilty plea.

## II.

This Court reviews a district court's grant of a writ of habeas corpus de novo and the factual findings supporting the grant for clear error. *Jenkins v. Artuz*, 294 F.3d 284, 290 (2d Cir.2002). In this case, the district court erroneously found that Theodoropoulos was convicted on a guilty plea, not after a jury trial. This error shaped the court's conclusion that Theodoropoulos was exempt from the administrative exhaustion requirement because his removal raised a constitutional question under the Supreme Court's holding in *St. Cyr*. Recognizing the district court's factual error, we analyze the exhaustion and constitutional question issues de novo, concluding, opposite to the district court, that Theodoropoulos's waiver of appeal did constitute a failure to exhaust administrative remedies from which no exception is appropriate.

### A. Waiver of Appeal

The doctrine of exhaustion of administrative remedies requires a party to pursue all possible relief within the deciding agency before seeking federal judicial review of an unfavorable administrative decision. *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995). Either "explicit statutory language" requiring intra-agency consideration or an administrative scheme offering non-judicial claim resolution will activate the doctrine. *Id.* Where exhaustion is required, a court must dismiss any unexhausted claim for lack of jurisdiction. *Id.*

The explicit statutory language requiring exhaustion of agency remedies before appeal of an immigration judge's decision to the federal district courts appears in 8 U.S.C. § 1252(d)(1). Under that pro-

---

1. Although the INS filed its objections outside the appropriate 10 day period, the district court conducted a de novo review of those parts of the magistrate judge's report that the INS challenged.

vision, "[a] court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right ...." 8 U.S.C. § 1252(d)(1)(2001). This Court considers an alien's waiver of the right to appeal to the BIA as a failure to exhaust administrative remedies for jurisdictional purposes. *See Mejia–Ruiz v. INS*, 51 F.3d 358, 364 (2d Cir.1995); *see also* 8 C.F.R. §§ 3.3 ("A notice of appeal may not be filed by any party who has waived appeal"); 3.38 (same); 3.39 (IJ decision final upon waiver of appeal)(2002).

■ Although Theodoropoulos argues that his statements before the IJ did not waive his appeal to the BIA and thus do not preclude federal review of his claims, this Court finds his statements clear evidence of waiver. After the IJ announced that Theodoropoulos was statutorily ineligible for relief and would be removed to Greece, he explained to Theodoropoulos that Theodoropoulos could either appeal the decision to a higher court or accept it as final. In response to the court's inquiry Theodoropoulos stated, "No, Your Honor, I want to be removed as soon as possible to my country." When the court again asked if Theodoropoulos accepted his decision as final, Theodoropoulos affirmed his satisfaction with the ruling for a second time.

In light of the court's clear explanation of the consequences of Theodoropoulos's agreement with the decision and Theodoropoulos's repeated acknowledgment of his acceptance of the decision, we find appeal to the BIA waived. This conclusion renders Theodoropoulos's claims outside the jurisdiction of the federal courts unless an exception to the rule of administrative exhaustion applies. Because Theodoropoulos's attempt to raise a substantial constitutional question presents an issue not previously addressed by this Court, we

review his assertion in detail below. As we conclude that no such exception is applicable, however, we reverse the district court's grant of the habeas petition.

## B. Exceptions to the Administrative Exhaustion Rule

■ A petitioner may avoid even statutorily established administrative exhaustion requirements when, inter alia, "a plaintiff has raised a substantial constitutional question." *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir.1996). The district court, relying on the magistrate judge's erroneous factual finding, adopted the magistrate's conclusion that Theodoropoulos raised a "substantial constitutional question" as to the retroactive applicability of AEDPA and IIRIRA to his case, allowing the court to consider his petition despite his waiver of BIA appeal. On appeal to this Court, the INS argues that once the factual error is corrected, Theodoropoulos is without a constitutional claim that could waive the exhaustion requirement. Reviewing the case after correcting the facts to reflect Theodoropoulos's trial by jury, we agree that the exhaustion requirement is not waived in this case.

In *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court affirmed this Court's conclusion that provisions of the AEDPA and IIRIRA repealing the possibility of discretionary relief from deportation did not apply retroactively to an alien defendant convicted on a guilty plea entered before the passage of AEDPA and IIRIRA. In interpreting the statutory provisions in question, the Court refused to find retroactive effect unless the statutory language required that result. *Id.* at 315–16, 121 S.Ct. 2271; *see also id.* ("A statute may not be applied retroactively ... absent a clear indication from Congress that it intended such a result."). The Court then found

that nothing in § 304(b), the portion of the IIRIRA eliminating the possibility of the waiver of deportation under the former INA § 212(c), indicated an affirmative intent by Congress to apply the provision retroactively.[2] *Id.* at 320, 121 S.Ct. 2271. The Court concluded that in the case of a potential deportee who pled guilty prior to AEDPA's enactment, retroactive application of § 304(b) impermissibly deprived the removable alien of an expectation important to his decision to enter a plea agreement with the government. *Id.* at 321, 121 S.Ct. 2271. Emphasizing the surrender of an accused's constitutional rights (including the right to trial) and the substantial benefits to the government underlying a plea agreement, the Court found that retroactive application of the IIRIRA improperly deprived the deportable alien of a benefit crucial to his willingness to plea. *Id.* at 323–34, 121 S.Ct. 2271.

Acknowledging that his conviction actually followed a jury trial, Theodoropoulos argues on appeal that while *St. Cyr* addressed only the impermissibility of retroactive application of § 304(b) to guilty pleas entered before AEDPA and IIRIRA's passage, the holding should extend to persons convicted after trial before the statutes' effective date. In Theodoropoulos's view, he, like a defendant pleading guilty, relied on the possibility of discretionary waiver when deciding to go to trial. He claims that denying the benefit of avoiding retroactive application of § 304(b) to a person who exercised his right to trial while giving that benefit to a person who

pled guilty inappropriately chills the exercise of a constitutional right. Urging that the denial of § 212(c) relief in his case attaches new consequences to the event of his conviction—an event completed before the passage of the AEDPA and IIRIRA, he concludes that to remedy the imposition of this new burden, his petition for habeas relief should be granted and his case remanded to the BIA for reconsideration.

■ The two-prong test for retroactive application of statutes established in *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994) and applied in *St. Cyr* governs our review of Theodoropoulos's petition. In conducting our review, we remain cognizant of the Supreme Court's "repeated[ ] counsel[ ] [that] the judgment whether a particular statute acts retroactively should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations". *St. Cyr*, 533 U.S. at 321, 121 S.Ct. at 2291 (internal citation and quotation omitted).

*St. Cyr* resolves the first prong in our analysis: The provision in question is ambiguous as to retroactive application. *Id.* at 316, 121 S.Ct. 2271. Thus, we begin our review at the second prong of retroactivity analysis, " 'whether the new provision attaches new legal consequences to events completed before its enactment.' " *St. Cyr, Id.* at 321, 121 S.Ct. 2271 (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499).

**2.** IIRIRA § 304(b) repealed 8 U.S.C. § 1182(c) which had previously provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . .

Immigration and Nationality Act of 1952 § 212(c), 8 U.S.C. § 1182(c)(1995).

Although directly addressing only admission of certain aliens to the country, the statute (Immigration and Nationality Act § 212(c)) had been broadly interpreted as grounds for discretionary relief from an order of deportation. *See Id.* at 294–95, 121 S.Ct. 2271.

■ Although Theodoropoulos urges that AEDPA attached new consequences to his decision to go to trial by altering his underlying expectation that even if he lost at trial, he might gain reprieve under § 212(c), we find that under the Supreme Court's reasoning in *St. Cyr*, a petitioner convicted after a trial rather than on a guilty plea has not faced a substantial change in expectations. The Supreme Court explained that because a plea agreement involved a "quid pro quo" between a defendant and the government, pleading alien defendants were "acutely aware of the immigration consequences of their convictions." *Id.* at 322, 121 S.Ct. 2271. The Court further recognized that in light of the "frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id.* at 323, 121 S.Ct. 2271. The Court found that the possibility of retroactively applying AEDPA and IIRIRA's retraction of the § 212(c) waiver to defendants who had relied heavily on the potential relief it provided in deciding to enter a plea bargain presented a "significant and manifest" possibility of unfairness. *Id.* Thus, the Court found retroactive application of the retraction of § 212(c) relief "contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations" when applied to alien defendants pleading guilty before the passage of AEDPA and IIRIRA.

Recognizing the Supreme Court's repeated emphasis of the importance of an alien's expectations in bargaining to its decision to deny retroactive application of AEDPA in *St. Cyr*, subsequent decisions have confined *St. Cyr* to the narrow factual parameters in which it arose. *See, e.g., Uspango v. Ashcroft*, 289 F.3d 226, 230 (3d

Cir.2002) ("*St. Cyr* addressed the rights of non-permanent resident aliens who fall into one particular category: individuals who, as defendants in criminal cases, entered into quid pro quo agreements with the government in which they waived certain constitutional rights and conferred specified benefits upon the government in exchange for receiving certain benefits, including the possibility of a waiver of deportation"); *Velasquez Gabriel v. Crocetti*, 263 F.3d 102, 106, 108 (4th Cir.2001) (describing *St. Cyr* as finding inappropriate retroactive effect of statute on aliens who pled guilty to crime in reliance on availability of discretionary deportation waiver, and noting that key factors in the decision included the likelihood of receiving a waiver under old rules and detrimental reliance on the possibility waiver). *Cf. Mohammed v. Reno*, 309 F.3d 95, 102–03 (2d Cir.2002) (holding that an alien was not entitled to retroactive relief under § 212(c) because the alien was convicted after such relief became unavailable, even though it was available when the underlying crime was committed).

Although our own Circuit has not yet ruled on the issue, we find it appropriate to join our sister circuits in confining *St. Cyr* to the plea situation from which it arose. No matter what Theodoropoulos's personal expectations may have been at the time he decided to go to trial, he did not surrender his rights in the type of reasoned exchange the Supreme Court found crucial to its *St. Cyr* holding. While an alien defendant weighing the costs and benefits of entering a plea agreement presumably saw "the possibility of [§ 212(c)] relief" as one of the "principal benefits" of entering a plea, 533 U.S. at 323, 121 S.Ct. at 2291, an alien defendant choosing to face trial may or may not have engaged in a similar cost-benefit analysis. The decision to seek trial by jury may have repre-

sented an expectation of defeating *any* possibility of removal rather than demonstrating a reliance on the *potential* of discretionary relief from an impending removal order. A jury's verdict, not the potential of discretionary waiver or the IIRIRA's removal thereof, determined the legal consequence of the decision to seek trial. Furthermore, unlike defendants who bargained to guilty pleas, alien defendants who, like Theodoropoulos, proceeded to trial did not provide a benefit to the government such that retracting a possible form of relief would now create "significant and manifest" evidence of unfairness.

Using *St. Cyr* as a guide, we do not find that retroactive application of AEDPA and IIRIRA to Theodoropoulos's case attaches new legal consequences to his decision to go to trial. Thus, we conclude that Theodoropoulos was not eligible for relief from the administrative exhaustion requirements of 8 U.S.C. § 1252(d). Because he was convicted after a jury trial, rather than after entering a guilty plea, his case does not raise the type of "substantial constitutional consideration" identified in *St. Cyr.*

### III.

Our conclusion that Theodoropoulos is not exempt from the administrative exhaustion requirement confines him to the consequences of his waiver of appeal. We find that Theodoropoulos failed to exhaust administrative remedies and conclude that the district court therefore lacked jurisdiction to review his habeas petition. We reverse the court's decision and dismiss the petition for lack of subject matter jurisdiction.

Chief Judge WALKER concurs in a separate opinion.

JOHN M. WALKER, JR., Chief Judge, concurring:

I concur in the majority's judgment reversing the district court's decision and dismissing the petition for lack of subject matter jurisdiction. I write separately, however, because Theodoropoulos raises a statutory interpretation claim, not a constitutional challenge, and therefore I believe that the majority's analysis of the constitutional exception to exhaustion is unnecessary. As the majority opinion states, Theodoropoulos relies on *Landgraf* and *St. Cyr* to argue that the revocation of § 212(c) relief should not apply retroactively. *See* Maj. Op., *supra*, at 738; *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf* and *St. Cyr*, the Court applied a rule of statutory interpretation, namely that "congressional enactments ... will not be construed to have retroactive effect unless their language requires this result." *St. Cyr*, 533 U.S. at 315–16, 121 S.Ct. 2271 (alteration in original); *see also Landgraf*, 511 U.S. at 268, 114 S.Ct. 1483. Thus, Theodoropoulos's claim is that the Immigration Judge misapplied the *Landgraf/St. Cyr* clear statement rule when construing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), rather than that it is unconstitutional for Congress to retroactively revoke the possibility of § 212(c) relief. Because the exception to exhaustion for constitutional claims does not apply to statutory interpretation claims, which the BIA regularly considers, *see, e.g., In re Perez*, 22 I. & N. Dec. 689, 691 (BIA 1999) (interpreting statute in light of *Landgraf*'s clear statement rule), Theodoropoulos was required to appeal to the BIA before raising this claim in the district court and thus the district court

should have dismissed his claim for failure to exhaust.

Were it necessary to consider whether Theodoropoulos stated a substantial constitutional claim, I would agree with the majority's analysis on the merits.