Grzegorz BRZUSZEK, Petitioner,

v.

Edward J. McELROY, et al., Respondents.

Leonidas Rafael Pereyra–Romero, Petitioner,

v.

John Ashcroft, et al., Respondents.

Marino Puntiel–Canela, Petitioner,

v.

United States Immigration And Naturalization Service, Respondent.

Vasilios Melitas, Petitioner,

v.

United States Immigration And Naturalization Service, Respondent.

Walison Goodman, Petitioner,

v.

United States Immigration and Naturalization Service, Respondent.

Carlos Shirley, Petitioner,

v.

United States Immigration and Naturalization Service, Respondent.

David Michael Burgess, Petitioner,

v.

John Ashcroft, et al., Respondents.

Manuel Reyes–Sandoval, Petitioner,

v.

John Ashcroft, et al., Respondents.

Marcos Urena–Martinez, Petitioner,

v.

John Ashcroft, et al., Respondents.

Nos. 97 CIV. 8922(JGK), 00 CIV. 1160(JGK), 99 CIV. 10121(JGK), 99 CIV. 10132(JGK), 99 CIV. 10134(JGK), 99 CIV. 11427(JGK), 00 CIV. 391(JGK), 00 CIV. 921(JGK), 98 CIV. 5274(JGK).

United States District Court, S.D. New York.

July 8, 2003.

## OPINION AND ORDER

KOELTL, District Judge.

The petitions for writs of habeas corpus pursuant to 28 U.S.C. § 2241 in the above captioned cases have been consolidated for consideration and decision. The Court has allowed the petitioners, Grzegorz Brzuszek, Leonidas Rafael Pereyra–Romero, Marino Puntiel–Canela, Vasilios Melitas, Walison Goodman, Carlos Shirley, David Michael Burgess, Manuel Reyes–Sandoval, and Marcos Urena–Martinez, to file consolidated papers because each petitioner challenges his order of deportation on the ground that the petitioner should have been allowed to seek a discretionary waiver of deportation pursuant to former Section 212(c) of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1182(c) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), § 304(b), Pub.L. No. 104–28, 1996 U.S.C.C.A.N. (110 Stat.) 3009, 3009–597). The petitioners claim that they were wrongly denied this relief because Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1277 (1996), was applied to them retroactively.

## I.

The relevant facts are as follows:

*Brzuszek:* [1]

Petitioner Brzuszek, a native of Poland, was admitted to the United States on or about April 6, 1978 as a lawful permanent resident ("LPR"). (Brzuszek R. at 59, 61, 64). Brzuszek was convicted upon a guilty plea to attempted sodomy in the first degree in the Supreme Court of the State of New York, Queens County, on May 2, 1996 and was sentenced on June 13, 1996 to a term of one and one half to four and one half years in prison. (Brzuszek R. at 53–58, 64.) On March 7, 1997 the Immigration and Naturalization Service ("INS") served Brzuszek with an order to show cause and notice of hearing for deportation dated February 18, 1997. (Brzuszek R. at 61–66.) The order to show cause charged that Brzuszek was deportable because he had been convicted of an aggravated felony, pursuant to Section 241(a)(2)(A)(iii) of the INA. (Brzuszek R. at 65.) During Brzuszek's deportation proceedings before the immigration judge ("IJ") on May 8, 1997, Brzuszek's counsel admitted the charges in the order to show cause but denied that he was deportable. (Brzuszek R. at 41.)

---

1. Petitioner Reyes–Sandoval withdrew his petition pursuant to a stipulation with the Government signed by the Court on October 11, 2002 remanding the case to the BIA for further administrative proceedings in accordance with the Supreme Court's decision in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). This opinion thus does not apply to him.

On May 8, 1997 the IJ issued an oral decision ordering Brzuszek deported and finding that Brzuszek was ineligible for a discretionary waiver of deportation pursuant to Section 212(c) of the INA because Section 440(d) of AEDPA barred aliens convicted of aggravated felonies from such relief. (Brzuszek R. at 34–37.) Brzuszek appealed the IJ's decision to the Bureau of Immigration Appeals ("BIA"), arguing, among other things, that the IJ erred by applying Section 440(d) retroactively to bar Section 212(c) relief for aliens such as himself whose criminal conduct predated the enactment of AEDPA. (R. at 8–16.) The BIA dismissed the appeal on October 31, 1997, stating that Brzuszek was ineligible for Section 212(c) relief pursuant to AEDPA irrespective of the date on which he committed his crime. (R. at 2–3.) Brzuszek filed this petition for a writ of habeas corpus on December 1, 1997.

*Pereyra–Romero*

Petitioner Pereyra–Romero is a native of the Dominican Republic who was admitted to the United States as an LPR on or about January 14, 1982. (Pereyra–Romero R. at 113, 161.) On August 2, 1996 Pereyra–Romero was convicted upon a guilty plea in a New York State court in Nassau County, of criminal sale of a controlled substance (cocaine) in the fifth degree and was sentenced to two to four years' imprisonment. (Pereyra–Romero R. at 107, 161.) On March 21, 1997 the INS served Pereyra–Romero with an order to show cause charging that the petitioner was subject to deportation pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA as an alien who had been convicted of violating a controlled substance law and of an aggravated felony. (Pereyra–Romero R. at 166, 168.) On June 2, 1997 an IJ transferred venue of the deportation proceedings to Buffalo, New York upon a motion by the INS. (Pereyra–Romero at 114–15, 156–57.) Venue was later changed to New York,

New York on the petitioner's motion. (Pereyra–Romero R. at 91, 94, 86.) At a hearing before an IJ on January 6, 1998 the petitioner denied that he had been convicted of criminal sale of a controlled substance in the fifth degree and that he was deportable as charged in the order to show cause. (Pereyra–Romero R. at 32–33.) The proceedings were adjourned on January 6, 1998 in part so that Pereyra–Romero could file an application for Section 212(c) relief, which he did. (Pereyra–Romero R. at 39, 44–46, 51–85.)

On March 18, 1998 the IJ issued an oral decision ordering Pereyra–Romero deported and finding the petitioner ineligible for Section 212(c) relief pursuant to Section 440(d) of AEDPA. (Pereyra–Romero R. at 24–28.) On January 29, 1999 the BIA upheld the IJ's order and dismissed the petitioner's appeal. (Pereyra–Romero at 2–3.) On March 1, 1999 the petitioner filed a petition for review of the agency order in the Court of Appeals for the Second Circuit that was withdrawn without prejudice on May 5, 1999. Pereyra–Romero subsequently filed a writ of habeas corpus with this Court in February, 2000.

*Puntiel–Canela:*

Petitioner Puntiel–Canela, a native of the Dominican Republic, entered the United States on or about June 24, 1982 as an LPR. (Puntiel–Canela R. at 81, 100.) Puntiel–Canela pleaded guilty on April 22, 1996 in the Supreme Court of the State of New York, Bronx County, to criminal sale of a controlled substance (cocaine) in the third degree and was later sentenced to one to three years' imprisonment. (Puntiel–Canela R. at 82–87, 105.) On June 18, 1996 the petitioner pleaded guilty in the same court to criminal sale of a controlled substance in the third degree and was sentenced to one to three years' imprisonment to run concurrently with his first sentence. (Puntiel–Canela R. at 88–92,

105.) The INS served the petitioner with an order to show cause on November 20, 1996 charging that he was removable from the United States pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA as an alien who had been convicted of a controlled substance offense and of an aggravated felony. (Puntiel–Canela R. at 100–109.) On March 27, 1997 the petitioner, through counsel, admitted the allegations in the order to show cause and conceded deportability but indicated that he wished to apply for Section 212(c) relief. (Puntiel–Canela R. at 52–53.)

The IJ issued an oral decision on March 27, 1997 ordering the petitioner deported and pretermitting Puntiel–Canela's application for Section 212(c) relief on the ground that his drug trafficking convictions made him statutorily ineligible for such relief. (Puntiel–Canela R. at 30–34.) The BIA dismissed the petitioner's appeal on January 8, 1998 on the ground that Section 440(d) of AEDPA barred such relief regardless of the date that the petitioner's crimes were committed. (Puntiel–Canela R. at 2.) Puntiel–Canela filed a petition for review of an agency action with the Second Circuit Court of Appeals on February 2, 1998. The petition was transferred on September 24, 1999 from the Second Circuit Court of Appeals to this Court as a petition for writ of habeas corpus.

*Melitas:*

Petitioner Melitas is a native of Greece who was admitted to the United States as an LPR on or about June 29, 1967. (Melitas R. at 57, 73, 115–16.) Melitas was sentenced on August 14, 1996 upon a plea of guilty in the Nassau County Court for the criminal sale of a controlled substance (cocaine) in the third degree. (Melitas R. at 57, 64–72, 116.) On March 21, 1997 the INS served Melitas with an order to show cause charging that he was subject to deportation pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA as an alien convicted of a controlled substance offense and of an aggravated felony. (Melitas R. 119, 122.)

In immigration proceedings on November 13, 1997 the petitioner, through counsel, conceded the allegations in the order to show cause and conceded deportability. (R. at 57.) That same day the IJ issued an oral opinion finding the petitioner deportable and ineligible for Section 212(c) relief under Section 440(d) of AEDPA. (Melitas R. at 34–37.) On May 20, 1998 the BIA dismissed Melitas's appeal on the ground that Section 440(d) barred relief regardless of the date of Melitas's conduct that was the basis for his conviction. (Melitas R. at 2.) Melitas filed a petition for review of an agency action with the Second Circuit Court of Appeals on June 8, 1998. The petitioner's case was transferred to this Court on September 24, 1999 as a petition for writ of habeas corpus.

*Goodman:*

Petitioner Goodman is a native of Guyana who was admitted to the United States as an LPR on July 8, 1993. (Goodman R. at 89, 114–15.) On June 18, 1996 Goodman pleaded guilty in the New York State Supreme Court, Queens County, to criminal sale of a controlled substance (cocaine) in the third degree and was sentenced on October 16, 1996 to one to three years' imprisonment. (Goodman R. at 65, 81–88, 115.) On March 19, 1997 the INS served the petitioner with an order to show cause alleging that he was removable from the United States pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA as an alien convicted of a controlled substance offense and of an aggravated felony. (Goodman R. at 116, 122.) On November 13, 1997, Goodman, through a representative, conceded the allegations in the order to show caused but argued that he was eligible for relief pursuant to Sec-

tion 212(c) of the INA. (Goodman R. at 64, 66–67.)

The IJ issued an oral decision on November 13, 1997 in which he found Goodman deportable and denied his eligibility for relief under Section 212(c) finding that Section 440(d) barred such relief in Goodman's case regardless of the date he committed his crime. (Goodman R. at 48–50.) The BIA upheld the IJ's decision on May 1, 1998. (Goodman R. at 2–3.) The petitioner filed a petition for review of an agency action with the Court of Appeals for the Second Circuit on June 1, 1998. The case was transferred to this Court on September 24, 1999 as a petition for writ of habeas corpus.

*Shirley:*

Petitioner Shirley, a native of Panama, was admitted to the United States on or about September 21, 1976 as an LPR. (Shirley R. at 51–53 86, 92–95.) Shirley was convicted upon a plea of guilty on June 11, 1996 in the County Court of the State of New York, Westchester County, to burglary in the second degree and was sentenced to a term of twenty-seven to fifty-four months imprisonment. (Shirley R. at 95, 115–17.) On March 10, 1997 the INS served Shirley with an order to show cause charging that he was subject to deportation as alien convicted of an aggravated felony pursuant to Section 241(a)(2)(A)(iii) of the INA. (Shirley R. at 95–97.) At deportation proceedings on September 10, 1997 Shirley, through counsel, admitted to the allegations in the order to show cause except that he claimed that he was a derivative United States citizen and denied the charge of deportability. (Shirley R. at 51–52.) The IJ adjourned the hearing but later found no evidence that Shirley was a United States citizen and Shirley's counsel conceded that the issue of citizenship was moot at a hearing on December 19, 1997. (Shirley R. at 69–70.)

The IJ issued an oral decision on December 19, 1997 ordering Shirley deported and barring his claim for relief under Section 212(c) pursuant to AEDPA and the IIRIRA. (Shirley R. at 29–33.) The BIA dismissed the appeal from that decision on July 8, 1998. (Shirley R. at 2.) Shirley filed a petition for review of an agency action with the Second Circuit Court of Appeals on July 20, 1998. This case was transferred to the Court as a petition for writ of habeas Corpus in November, 1999.

*Burgess:*

Petitioner Burgess is a native of Belize who was admitted to the United States as an immigrant on or about March 13, 1983. (Burgess R. at 23.) In June, 1996 the petitioner pleaded guilty in the Southern District of New York to conspiracy to distribute and possess with intent to distribute PCP and, on September 20, 1996, he was sentenced principally to 46 months imprisonment. (Burgess R. at 2–3; Ptnrs.' Mem. at 12.) On June 9, 1999 the INS served Burgess with a notice to appear charging that he was subject to removal pursuant to Section 237(a)(2)(A)(iii) of the INA as an alien convicted of an aggravated felony. (Burgess R. at 23–24.) The notice to appear stated that the INS would notify the petitioner as to the time and date of his hearing and warned that failure to attend the hearing could result in an order for his removal being issued in his absence. (Burgess R. at 24.) On August 4, 1999 the INS provided Burgess with notice that his hearing would be held on August 30, 1999 at 2:00 p.m. (Burgess R. at 17.) Burgess did not appear and the IJ ordered his removal in absentia on August 30, 1999. (R. at 1.) Burgess did not appeal the IJ's decision to the BIA. Burgess filed his petition for writ of habeas corpus on January 20, 2000.

*Urena–Martinez*

Petitioner Urena–Martinez, a Dominican Republic native, was admitted to the United States as an LPR on or about March 6, 1982. (Urena–Martinez R. at 94, 109.) In August, 1996 Urena–Martinez was convicted in New York State County Court, Rockland County, after having pleaded guilty to criminal sale of a controlled substance (cocaine) in the third degree and was sentenced to one to three years' imprisonment. (Urena–Martinez R. at 105, 109.) The INS served Urena–Martinez with an order to show cause dated November 21, 1996 alleging that he was deportable from the United States pursuant to Sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA as an alien convicted of violating a controlled substance law and of an aggravated felony. (Urena–Martinez R. at 109–116.) On July 2, 1997, the petitioner, through counsel, admitted to the allegations against him in the order to show cause before an IJ and he sought a discretionary waiver from deportation under Section 212(c). (Urena–Martinez R. at 79–81.)

The IJ entered an oral decision on July 2, 1997 ordering Urena–Martinez deported and finding him ineligible for Section 212(c) relief. (Urena–Martinez R. at 58–60.) The BIA dismissed the petitioner's appeal on January 9, 1998 partly on the ground that Section 440(d) of AEDPA precluded such relief. (Urena–Martinez R. at 2.) This petition for writ of habeas corpus was filed on July 23, 1998.

## II.

The petitioners challenge their orders of deportation or removal[2] on the ground that they should have been permitted to seek a discretionary waiver of deportation pursuant to former Section 212(c) of the INA. The BIA has affirmed or dismissed the appeals of all of the petitioners' orders of deportation or removal, except for that of petitioner Burgess who did not seek review in the BIA, and those petitioners have thus exhausted their administrative remedies and the habeas petitions are properly before this Court. In addition, this Court retains jurisdiction under 28 U.S.C. § 2241 to review the legal claims against a final order of deportation or removal raised by an alien subject to deportation or removal by reason of having committed a criminal offense. *See INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (hereinafer *St. Cyr. II* ).

### (A)

■ The Court addresses Burgess's petition at the outset because the procedural posture of his case differs from that of the other petitioners. Pursuant to 8 U.S.C. 1252(d), "A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right. . . ." *See Theodoropoulos v. INS*, 313 F.3d 732, 736 (2d Cir.2002). Burgess, however, failed to raise a claim for Section 212(c) relief with either the IJ or the BIA. Because the petitioner failed to exhaust his administrative remedies, this Court lacks jurisdiction to review his order of deportation.

The Second Circuit Court of Appeals has suggested that a petitioner "may avoid even statutorily established administrative exhaustion requirements when, inter alia, 'a plaintiff has raised a substantial constitutional question.'" *Id.* at 737 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir.1996)). Counsel for the petitioner suggested at oral argument that such an

---

**2.** Following the passage of IIRIRA, the procedure formerly known as "deportation" is now known as "removal." *See Reid v. Holmes,*

323 F.3d 187, 188 n. 1 (2d Cir.2003) (per curiam).

exception may apply in this case pursuant to *Theodoropoulos*. However, in *Beharry v. Ashcroft*, 329 F.3d 51, 57 n. 11 (2d Cir.2003), another panel of the Court of Appeals called into question the validity of this proposition. *Beharry* raised the issue of whether the statutory requirement of exhaustion could be applied in a habeas corpus proceeding, although it did not decide the issue. *Beharry* held that the petitioner was required pursuant to the judicially created doctrine of exhaustion to present his claim that he was entitled to § 212(h) relief to the immigration authorities. *Id.* at 61–63.[3]

In this case *Theodoropoulos* is most on point because in that case the Court of Appeals found that the petitioner's claim to be excused from exhaustion requirements was without merit because he had failed to raise a substantial constitutional claim. In that case, Theodoropolous had argued that AEDPA's bar to § 212(c) relief in his case was an impermissible retroactive application of AEDPA because he had been convicted after a jury trial prior to AEDPA's effective date. In this case, as explained below, Burgess' claim similarly lacks any substance because he claims only that his criminal conduct occurred before the effective date of AEDPA even though he pleaded guilty after the effective date. In view of the decisions of the Court of Appeals, there is no reasonable argument that AEDPA could not be applied to the facts of Burgess' case. Therefore he was not excused from exhaustion. In any event, as explained below, even if the Court did have jurisdiction over Burgess's petition, the petitioner is not entitled to relief on the merits.

(B)

Former Section 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . .

8 U.S.C. § 1182(c) (1994). Although Section 212(c) by its terms applies to residents returning from temporary departures abroad, it has long been interpreted to apply to lawful permanent residents who have not left the United States but who face deportation. *See St. Cyr*, 533 U.S. at 295, 121 S.Ct. 2271; *Bedoya–Valencia v. INS*, 6 F.3d 891, 895–98 (2d Cir.1993); *Francis v. INS*, 532 F.2d 268, 273 (2d Cir.1976); *Copes v. McElroy*, No. 98 Civ. 2589, 2001 WL 830673, at *3 (S.D.N.Y. July 23, 2001). To qualify for relief under Section 212(c), an alien had to show that the alien was a lawful permanent resident of the United States who had a lawful unrelinquished domicile of seven consecutive years and that the alien had not been convicted of one or more aggravated felonies for which he had served a term of imprisonment of at least five years. *See* 8 U.S.C. 1182(c). If an alien made such a showing, the decision whether to grant relief from deportation was left to the discretion of the Attorney General or his delegates. *See id.; Rankine v. Reno*, 319 F.3d 93, 95 (2d Cir.2003), *reh'g denied*, Nos. 01–2135, 01–2483, 00–2631 (2d Cir. Apr. 21, 2003); *St. Cyr v. INS*, 229 F.3d 406, 410–411 (2d Cir.2000) (hereinafter *St.*

---

**3.** *Beharry* construed a provision of the IIRIRA transitional rules because the INS had commenced deportation proceedings in that case prior to IIRIRA's April 1, 1997 effective date. *Beharry*, 329 F.3d 51, 56 n. 7. The Court notes that the permanent rules at issue in this case with regard to Burgess contain an almost identical exhaustion requirement. *Id.* at 57 n. 8.

*Cyr I*), *aff'd* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

On April 24, 1996 Congress enacted AEDPA and Section 440(d) of the statute precluded aliens who were convicted of committing drug-related crimes or aggravated felonies regardless of time served in prison from obtaining Section 212(c) relief. *See* AEDPA § 440(d), 110 Stat. at 1277; *St. Cyr I*, 229 F.3d at 411. One of Congress's goals in enacting the statute was to increase the number of deportable criminal aliens. *See Domond v. INS*, 244 F.3d 81, 84 (2d Cir.2001); *St. Cyr I*, 229 F.3d at 411. Former Section 212(c) was subsequently repealed by IIRIRA Section 304(b) in 1996 and was replaced by a form of relief entitled "cancellation of removal," codified at 8 U.S.C. 1229b. IIRIRA, 1996 U.S.C.C.A.N. (110 Stat) at 3009–597; *Domond*, 244 F.3d at 84.

■ Each of the petitioners in this case was convicted upon a guilty plea after the enactment of AEDPA on April 24, 1996 for offenses committed prior to the effective date of the statute.[4] The petitioners argue that because their criminal acts predated AEDPA, the BIA was wrong to bar relief under Section 212(c) because AEDPA does not apply to persons whose criminal acts preceded the statute's enactment. The Government argues persuasively that the relevant date is not that on which the criminal acts were committed but the date on which the petitioners pleaded guilty, each of which was after April 24, 1996 by which time AEDPA Section 440(d) had

eliminated Section 212(c) relief for aliens convicted of drug related crimes and aggravated felonies regardless of the length of imprisonment, including the petitioners. Thus, the Government argues, under the Second Circuit Court of Appeals decision in *Domond*, the IJ's and BIA properly denied the petitioners' claims for discretionary relief because the petitioners were ineligible for Section 212(c) relief and the petitions for writs of habeas corpus should be denied.

The Government is correct that *Domond* is controlling. *Domond* also involved an alien petitioner whose criminal acts preceded the enactment of AEDPA but who entered a guilty plea to second degree robbery after the statute's effective date. *See Domond*, 244 F.3d at 83–84. An IJ found Domond deportable and the BIA denied his subsequent appeal on the ground that the petitioner's guilty plea post-dated AEDPA although his criminal conduct pre-dated the statute. *See id.* at 83. The district court, however, granted the petition for writ of habeas corpus on the ground that the pre-AEDPA laws in effect at the time of the petitioner's conduct, rather than the laws in effect at the time of his plea, should have governed his deportation hearings. *See id.* at 83–84.

The Second Circuit Court of Appeals reversed and held that AEDPA Section 440(d) barred the petitioner from obtaining relief under Section 212(c) of the INA and that "it is the conviction, not the underlying criminal act, that triggers the disquali-

---

4. The actual date that petitioners Pereyra–Romero, Shirley, Melitas, and Urena–Martinez pleaded guilty is not clear from the administrative records compiled in those cases. Instead, the administrative records make clear that these petitioners were sentenced after AEDPA's effective date having pleaded guilty at an unspecified prior time. However, the petitioners concede that they pleaded guilty after AEDPA's effective date. *See* Letter to the Court from Jonathan Avirom

dated June 26, 2003 (Urena–Martinez pleaded guilty after April 24, 1996); Letter to the Court from Matthew L. Guadagno dated June 30, 2003 (petitioners Melitas, Pereyra–Romero and Shirley pleaded guilty after April 24, 1996). Moreover, the petitioners argue that it is the time of the conduct to which they pleaded guilty, which in each case preceded AEDPA's passage, that is the operative time for their argument that AEDPA was applied retroactively to bar Section 212(c) relief.

fication from § 212(c) relief." *Id.* at 85 (internal quotation marks and alteration omitted). The Court of Appeals carefully examined whether such an application of Section 440(d) was impermissibly retroactive. *See id.* at 84–86. To do so, the Court of Appeals looked to the two-step retroactivity analysis established in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *See Domond,* 244 F.3d at 85. First, the Court of Appeals asked "whether Congress expressly prescribed the statute's proper reach." *Id.* (internal quotation marks omitted). Finding the statute ambiguous, the Court of Appeals proceeded to the second step and determined "whether applying the law to pre-enactment conduct would have a retroactive effect. If so, then in keeping with our traditional presumption against retroactivity, we presume that the statute does not apply to that conduct." *Id.* (internal quotation marks and citation omitted). The court noted that a statute is retroactive only if it imposes new legal consequences to events completed before its enactment, and is not impermissibly retroactive merely because it is applied to a case arising from conduct predating the statute's enactment. *See id.* The court also noted that courts should rely on familiar considerations of fair notice, reasonable reliance, and settled expectations for guidance in determining retroactive effect. *See id.*

The Court of Appeals found no impermissible retroactive effect in applying Section 440(d) of AEDPA to the petitioner. *See id.* at 86. The Court of Appeals stressed that it was the conviction and not the underlying criminal conduct that barred relief from the discretionary waiver. *See id.* The Court of Appeals rejected the petitioner's argument that because the Attorney General had frequently granted Section 212(c) waivers, deportation that had once been only possible was now, post-AEDPA, certain. *Id.* Instead,

the Court found, deportation was always a consequence even if Section 212(c) relief had often been granted. *Id.* Next, the Court of Appeals differentiated *Domond* from its decision in *St. Cyr I* in which both the relevant criminal conduct and guilty plea pre-dated AEDPA. *Id.* The reliance and expectation concerns in *Domond* were unlike those in *St. Cyr I,* the court reasoned, because under the facts of *St. Cyr I* "[r]eliance and expectation interests are especially strong ... because an alien is likely to consider the immigration consequences when deciding whether and how to plead." *Id.* In *Domond,* however, the Court found that:

> it cannot reasonably be argued that aliens committed crimes in reliance on a hearing that might possibly waive their deportation. As we noted in *St. Cyr,* '[i]t would border on the absurd to argue' that Domond would have decided not to commit a crime if he had known that he not only could be imprisoned, but also could face deportation without the availability of a discretionary waiver of deportation.

*Id.*

The petitioners argue that *Domond* does not apply because its logic is inconsistent with the Supreme Court's subsequently issued decision in *St. Cyr II* in which the Court affirmed *St. Cyr I.* The petitioners point out that the Supreme Court noted that retroactivity analysis should be informed by "familiar considerations of fair notice, reasonable reliance, and settled expectations," *St. Cyr II,* 533 U.S. at 321, 121 S.Ct. 2271, and they accuse the Court of Appeals of limiting its analysis to reliance. However, the petitioners' argument ignores the fact that the Court of Appeals relied on the very same considerations noted by the Supreme Court and the Supreme Court itself spent much of its analysis on the reasonable reliance and expectations that inform a guilty plea, considerations that could not

conceivably be applied to the underlying criminal conduct.

In *St. Cyr II*, the Supreme Court held that Section 212(c) relief "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Id.* at 326, 121 S.Ct. 2271. The Court found that "[t]here can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* at 322, 121 S.Ct. 2271. Thus, the Court found, because the respondent in the case and other aliens like him "almost certainly relied upon [the significant likelihood of receiving Section 212(c) relief prior to the enactment of AEDPA and IIRIRA] in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief ... has an obvious severe retroactive effect." *Id.* at 325, 121 S.Ct. 2271.

Unlike the facts in *St. Cyr*, the petitioners in this case did not plead guilty at a time when they could have factored any likelihood of receiving Section 212(c) relief into their decision to plead guilty. Thus, *Domond* is not inconsistent with *St. Cyr* and remains the law in this Circuit. Other judges of this court have issued opinions consistent with *Domond* since the Supreme Court issued *St. Cyr II. See, e.g., Green–Mendoza v. Ashcroft,* No. 99 Civ. 9911, 2002 WL 1870285, at *2–3 (S.D.N.Y. Aug. 14, 2002) (stating that the petitioner was ineligible for a Section 212(c) discretionary waiver when he pleaded guilty after AEDPA's effective date); *Needham v.*

*Ashcroft,* No. 00 Civ. 2416, 2002 WL 986916, at *1–3 (S.D.N.Y. May 14, 2002) (finding the petitioner ineligible for Section 212(c) relief when he entered a plea of guilty after the enactment of IIRIRA); *Soto v. Ashcroft,* No. 00 Civ. 5986, 2001 WL 1029130, at *4–6 (S.D.N.Y. Sept. 7, 2001) (finding petitioner ineligible for Section 212(c) relief because he pleaded guilty after the enactment of AEDPA and IIRIRA). In other cases, the Second Circuit Court of Appeals has also reaffirmed the validity of *Domond* and the limitation of *St. Cyr II* to petitioners who pleaded guilty prior to the effective date of AEDPA. *See, e.g., Beharry,* 329 F.3d 51, 63–64 (noting that the Court of Appeals had previously rejected the petitioner's argument that *St. Cyr II* overruled *Domond* and stating that *Domond* remains good law); *Rankine,* 319 F.3d at 100 ("Because those aliens who went to trial prior to the elimination of § 212(c) relief cannot show that they altered their conduct in reliance on the availability of such relief, we hold that IIRIRA's repeal of § 212(c) is not impermissibly retroactive as applied to them."); *Theodoropoulos,* 313 F.3d at 739 ("under the Supreme Court's reasoning in *St. Cyr,* a petitioner convicted after a trial rather than on a guilty plea has not faced a substantial change in expectations" if AEDPA or IIRIRA is applied to him to bar Section 212(c) relief); *Mohammed v. Reno,* 309 F.3d 95, 102–03 (2d Cir.2002) (denying a stay of deportation on the ground that *Domond* remains binding authority and rendered the petitioner unlikely to succeed on the merits of his claim for relief because the petitioner was convicted after section 212(c) relief became unavailable).[5]

5. This Court initially held these cases in abeyance pending the Second Circuit Court of Appeals decision in *Carr v. Reno,,* which raised similar issues to those presented by the petitioners. However, on January 4, 2002 the

Court of Appeals issued a summary order affirming the district court's denial of Carr's petition for writ of habeas corpus in accordance with the holding in *Domond* that Section 440(d) of AEDPA does not have an im-

## CONCLUSION

The remaining arguments of the parties are either moot or without merit. For the reasons explained above, the petitions for writs of habeas corpus are denied. The Clerk is directed to enter judgments in these cases and to close the cases.

**SO ORDERED.**

permissible retroactive effect when applied to aliens whose criminal conduct pre-dated AEDPA's effective date but whose criminal convictions post-dated AEDPA's enactment date. *See Carr v. Reno,* 24 Fed.Appx. 99, 100, 2002 WL 24144, *1 (2d Cir.2002). The summary order is not binding on this Court, and the petitioners urge the Court to continue to hold the petitions in abeyance pending a deci-sion on the motions for rehearing and rehearing en banc filed in *Carr* in February 2002. However, *Domond* remains the law in this Circuit repeatedly reaffirmed by the Court of Appeals, and the Court sees no reason to continue to hold the petitions in abeyance, particularly in view of the length of time some of these petitions have been pending.